IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. PAYLOR**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:16cv1071 |
| ) | **Electronic Filing** |
| **ALLEGHENY COUNTY FAMILY** ) | |
| **DIVISION/DOMESTIC RELATIONS**, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Proceeding *pro se*, John R. Paylor ("plaintiff") commenced this action against "Allegheny County Family Division/ Domestic Relations" ("defendant") by filing a motion to proceed *in forma pauperis* and attaching to it a "complaint" seeking relief for defendant's alleged violations of (1) his civil rights and (2) federal statutes. These violations stem from court orders holding plaintiff in contempt as part of the process of enforcing an order of child support and forcing him to pay arrearages in that support or spend months confined at the county jail. Amended Compl. (Doc. No. 8) at pp. 8-11. Plaintiff contends that these orders are unlawful because his only source of income is a veterans' pension, which he alleges is a "means-tested public assistance benefit" that is not counted as income and therefore cannot be used to satisfy his child support obligations. Id. at p. 8. He seeks an order from this court reversing the orders of the Court of Common Pleas of Allegheny County that have obligated him to pay child support and have seized his pension benefits or forced him to use them to satisfy that support. Id. at p. 10. Presently before the court is defendant's motion to dismiss and plaintiff's motions for a temporary restraining order and to challenge the jurisdiction of defendant. For the reasons set

forth below, defendant's motion will be granted, plaintiff's motions will be denied and the complaint will be dismissed.

Defendant moves to dismiss on a number of grounds. First, it contends that plaintiff's claims are barred by the domestic relations exception to federal jurisdiction. Second, the doctrine of abstention is appropriate given that the underlying case of child support is ongoing. Third, plaintiff requests the entry of orders which would run afoul of the <u>Rooker-Feldman</u> doctrine. Fourth, the Eleventh Amendment bars consideration of plaintiff's claims. Finally, defendant maintains that it is not a person within the meaning of § 1983.

Plaintiff counters each of these contentions and maintains that he is entitled to the relief he seeks. Specifically, he argues that defendant's attempts to compel the use of his pension funds to satisfy child support improperly 1) invades the Secretary of the Veterans Administration's exclusive jurisdiction to determine payments to veterans and 2) evades the exclusive system for judicial review of claims regarding veterans benefits established by the Veterans Judicial Review Act. He likewise seeks to establish that the treatment he has received at the hands of defendant has violated his constitutional rights.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." <u>Rocks v. City of Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. <u>Id.</u> at

544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally. McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002). And in such circumstances the court has an obligation to "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688 (quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

Plaintiff's allegations stem from prior proceedings in state court that led to an order of child support. He was then held in contempt for failure to pay the support and his Veterans Administration pension funds for partial disability were seized from his bank account and/or he has been forced to use them to avoid extensive periods of incarceration at the county jail. Plaintiff explicitly has named the Family Law Division of the Allegheny County Court of

4

Common Pleas as the only defendant. Specific individuals identified as being involved in the referenced process are Domestic Relations Officer Weber and Judges Evashavik-DiLucente, Walko, Jr., and Kelly of the Family Law Division of the Allegheny County Court of Common Pleas. See Amended Complaint at p. 8; Plaintiff's Brief in Support of Motion to Challenge the Jurisdiction of Defendant (Doc. No. 18-1) ("Brief in Support") at p. 10; and Plaintiff's Motion for Temporary Restraining Order (Doc. No. 19) ("Motion for TRO") at pp. 2, 4, 9 & 11.

Plaintiff asserts that his filing of the instant action has in effect removed the entire domestic relations proceeding in state court to this court. Plaintiff's Motion for TRO (Doc. No. 19) at p. 2-3. He maintains that this court has jurisdiction over the matter because the Allegheny County Court of Common Pleas exceeded its authority by incarcerating him and seizing funds from his bank account, which contained his veterans' benefits. In doing so, "defendant" purportedly violated plaintiff's Fourth Amendment right to be free from unlawful seizure, Seventh Amendment right to a jury trial and Fourteenth Amendment due process rights by failing to abide by federal law and the VA's specific decision establishing that his pension benefits cannot be garnished or attached. Id. at p. 9, 12, 14. And by continuing to subject plaintiff to the threat of incarceration through a finding of contempt, defendant has assumed jurisdiction over plaintiff's pension benefits, which is an area reserved exclusively to the Secretary of the Veterans Administration; it likewise has violated the Supremacy Clause of the United States Constitution. Plaintiff's Brief in Support (Doc. No. 18-1) at pp. 7-10.

By way of relief, plaintiff seeks a declaration that his pension funds are a means-based form of public assistance and thus exempt from child support payments, a reversal of the child support order, damages for erroneously seized funds, and punitive damages. Amended Complaint (Doc. No. 8) at p. 10. He also seeks a restraining order enjoining defendant and those

acting under its authority from issuing bench warrants and related proceedings seeking to gain access to plaintiff's means-based pension funds. Motion for TRO at p. 16-17.

This is plaintiff's second attempt to use a civil rights complaint in this court to counter the orders and process that have transpired in the Family Division of the Court of Common Pleas of Allegheny County. His first attempt was <u>John Paylor v. Allegheny County, Family Division/Adult Section Domestic Relations Title IV Agency</u>, 2:14cv1688 (W.D. Pa. 2014). His claims in that case were dismissed pursuant to a Memorandum Opinion issued on February 10, 2015. <u>See</u> Memorandum Opinion of February 10, 2015 (Doc. No. 5 in 2:14cv1688).

Plaintiff's claims in the instant case are little more than a rehash of the claims he presented in his first lawsuit, with an emphasis on the fact that his pension benefits are a needs-based source of assistance funding and thus should not count as a form of income in determining child support. He adds allegations that defendant issued orders to the U.S. Department of Veterans Affairs Regional Office to apportion 55% of plaintiff's pension benefits to provide Dione Johns with child support and directed Dione Johns to file an apportionment claim against plaintiff's pension benefits, which the Veterans Administration denied. Plaintiff asserts that defendant and Johns were informed through this process that plaintiff's pension is not subject to attachment or garnishment. In addition, hearing officer Weber acknowledged in a state court proceeding that veterans' pension benefits are exempt from attachment; he nevertheless has actively sought to compel the use of such funding to satisfy plaintiff's support obligations once plaintiff has received the funding. In other words, defendant's efforts to attach the funds once they are deposited into plaintiff's checking account and/or threaten him with contempt in order to extract the funds violates his constitutional rights, exceeds defendant's jurisdiction, and traverses the jurisdiction reserved exclusively for the Secretary. <u>See</u> Plaintiff's Brief in Support (Doc. No.

18-1 in 2:116cv1071) at p. 7-10. Having been unable to convince the judges in the Court of Common Pleas of Allegheny County that his position has merit, plaintiff requests this court to stop the state court's forced use of his pension to satisfy his child support.

Even reading plaintiff's allegations in the light most favorable to him, the claims in his amended complaint are meritless or otherwise not subject to review by this court for a variety of reasons. First, abstention under Younger v. Harris, 401 U.S. 37 (1971), is warranted. Although narrowly defined and restrictively applied, Younger abstention is appropriate when the following three requirements clearly are satisfied: (1) there are ongoing judicial proceedings in state court; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims being advanced. Lazaridis v. Wehmer, 591 F.3d 666, 670 (3d Cir. 2010).

Each of the requirements for Younger abstention clearly are satisfied here. There were and are ongoing judicial proceedings between the parties in the Court of Common Pleas of Allegheny County. If fact, plaintiff seeks to alter the actions of defendant undertaken pursuant to an ongoing order of support. Thus, the first requirement is satisfied.

Furthermore, plaintiff's pleading make clear that the state court proceedings have provided plaintiff with a number of opportunities to present his contention that his VA pension benefits are a means-based form of public assistance that is beyond the reach of the support order. Plaintiff's dissatisfaction with the result of his efforts to advance that argument is not dispositive because "Younger requires only 'an opportunity to present federal claims in a state proceeding'" and not an assurance that the tribunal will reach a particular result. Lazaridis, 591 F.3d at 670-71 (quoting Juidice v. Vail, 430 U.S. 327, 337 (1977)).

Finally, plaintiff seeks to interject this court into a garden-variety domestic relations matter. He seeks to have numerous orders seeking to maintain and enforce a child support order declared unenforceable and reversed. He likewise seeks to enjoin defendant from entering any future orders of a similar nature. Such relief "would render the state court's orders or judgments nugatory" in an area where "federal courts have no general jurisdiction . . . and in which the state courts have a special expertise and experience." Id. at 671 (quoting Schall v. Joyce, 885 F.2d 101, 108 (3d Cir. 1989) and Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000)).

The three requirements for Younger abstention clearly are established. To proceed in the manner advocated by plaintiff would reflect "negatively upon the state court's ability to enforce constitutional principles," a proposition which soundly supports the application of Younger abstention. Lazaridis, 591 F.3d at 671. Consequently, we decline plaintiff's invitation to review defendant's treatment of plaintiff's defenses predicated on federal law and the United States Constitution.

Second, federal suits against the state are barred by the Eleventh Amendment.[1] Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). Eleventh Amendment immunity applies to suits against the state regardless of the relief sought. In re Kish, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the 'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)); see also Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the state itself simply because no money judgment is sought.").

---

[1] The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997).

8

Suits against a state agency or a state department are considered to be suits against a state which are barred by the Eleventh Amendment. In re Kish, 221 B.R. 118, 124-25 (Bkrtcy. D. N.J. 1998) (quoting Geis v. Board of Educ. of Parsippany–Troy Hills, Morris Cnty., 774 F.2d 575, 580 (3d Cir.1985)); accord Hafer v. Melo, 502 U.S. 21, 25 (1991); Haybarger v. Lawrence County Adult Probation And Parole, 551 F.3d 193, 198 ("the Eleventh Amendment applies to suits against subunits of the State") (citing Pennhurst, 465 U.S. at 100)). And suits against state officials for acts taken in their official capacity must be treated as suits against the state. Hafer, 502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system, and all courts and agencies of [that system] are part of the Commonwealth government rather than local entities." Haybarger, 551 F.3d at 198 (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240-41 (3d Cir. 2005) and Pa. Const. art. V, § 1)). It likewise is settled that "Pennsylvania's judicial districts . . . are entitled to Eleventh Amendment immunity." Id.

The Domestic Relations Section is a subunit of the Allegheny County Court of Common Pleas, and thus it is a subunit of the Commonwealth's unified judicial system. See 42 Pa.C.S.A.§ 961 ("Each court of common pleas shall have a domestic relations section . . ."); accord Chilcott v. Erie County Domestic Relations, 283 Fed. Appx. 8, 10 (3d Cir. 2008) ("Furthermore, the District Court properly dismissed the suit against the Erie County Prison and the Erie County Domestic Relations Section of the Erie County Court of Common Pleas because the Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens.").

The Allegheny County Domestic Relations Section is a subunit of the Allegheny County Court of Common Pleas. The Allegheny County Court of Common Pleas is a state entity.

Immunity attaches to the actions of the Allegheny County Domestic Relations Section pursuant to the Eleventh Amendment. Accordingly, plaintiff's claims against this entity must be dismissed. See Bryant v. Cherna, 520 F. App'x 55, 57 (3d Cir. 2013) ("[T]he state courts of Pennsylvania, including their domestic relations sections, are entitled to immunity from suit in federal court pursuant to the Eleventh Amendment. Accordingly, we agree that both the Family Division and the Domestic Relations Section [of Allegheny County] are immune from suit.")

Third, to the extent plaintiff's "complaint" should be construed as setting forth claims against the individuals referenced therein in their individual capacity, such claims likewise are subject to dismissal. Plaintiff's claims against Judges Evashavik-DiLucente, Walko and Kelly ("the judicial defendants") are barred by judicial immunity. Immunity from suit applies to judicial officers in the performance of their official duties, thereby relieving them from liability for judicial acts. Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9 (1991)). Furthermore, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).

Plaintiff's claims are all founded on orders entered against him in Family Court proceedings. As plaintiff's claims against the judicial defendants are based on the performance of their duties, the judicial defendants clearly are entitled to judicial immunity on all claims advanced against them. As a result, all claims against the judicial defendants must be dismissed.

Plaintiff's claims against Domestic Relations Officer Weber also are barred by judicial immunity. The protections of judicial immunity extend to those who perform "quasi-judicial" functions. Gallas v. Supreme Court of Pa., 211 F.3d 760, 772-73 (3d Cir. 2000) (citing Forrester

v. White, 484 U.S. 219, 225 (1988) (the protections of judicial immunity extend to officials "who perform quasi-judicial functions"); Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996) ("[Defendant], while acting as Clerk of the United States District Court . . . in many of his actions performed quasi-judicial functions . . . .  Even if . . . [defendant] deceived [plaintiff] regarding the status of the [supersedeas] bond and improperly conducted hearings to assess costs, all in coordination with Judge Brewster, such acts would fall within [the defendant's] quasi-judicial duties and are thus protected by absolute immunity."); McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that a prison physician who prepared an evaluation of an inmate pursuant to a judge's request was "functioning as an arm of the court" and "[a]s such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly"); Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir. 1989) ("[W]e conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts [undertaken] pursuant to the judge's instructions.").

In Lepre v. Tolerico, the Third Circuit ruled that Lackawanna County officials were entitled to quasi-judicial immunity because they acted pursuant to a valid bench warrant issued in a child support arrearage proceeding.  156 Fed. Appx. 522, 525 (3d Cir. 2005); see also Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975) (same).  In other words, ". . . where the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge." Waits, 516 F.2d at 206.

All of DRO Weber's actions were undertaken as official actions by an officer of the Domestic Relations Department and/or pursuant to Judge Evashavik-DiLucente, Judge Walko or

11

Judge Kelly's orders. Consequently, plaintiff's complaint fails to set forth factual allegations that can overcome the quasi-judicial immunity that inures to this defendant under the circumstances.

Moreover, even assuming that plaintiff's "complaint" can and should be interpreted to set forth claims against any identified individuals that are not entitled to immunity, it equally is clear that such claims fail for substantive reasons as well. Plaintiff's reliance on the Due Process Clause of the Fourteenth Amendment is wide of the mark.

Where a state provides a system of notice and opportunity to challenge the deprivation of property, it affords the process that is required by the Fourteenth Amendment. The record sufficiently indicates that plaintiff has been afforded due process.

"[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by [an entity charged with fulfilling a constitutional or congressionally imposed mandate]." DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir.1995), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir.2003). In other words, when a state "affords a full judicial mechanism with which to challenge the [] decision" in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism. Id. (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 682 (3d Cir.1991)).

Here, plaintiff's submissions indicate he had notice that he was in arrears with his child support payment and the Commonwealth intended to utilize enforcement mechanisms, including holding him in contempt or seizing his assets, to ensure compliance with his support obligations. As plaintiff recounts, he has been confined in the Allegheny County Jail on numerous occasions for failing to comply with child support order FD 01-03810 and had $4,562.71 of his pension

benefits seized from his checking account. Amended Complaint at p. 8. On January 16, 2015, defendant caused $2,562.71 to be seized from plaintiff's checking account with USAA Bank. Id.

More recently, on May 17, 2016, plaintiff was brought before Judge Evashavik-Dilucente and ordered to open a checking account and deposit $330.00 every month and provide Dione Johns with access to the money. Plaintiff was brought before Judge Evashavik-Dilucente again on May 31, 2016, and forced to pay $1,000.00 from his pension funds or face being held another 90 days in the county jail. Id.

On July 15, 2016, plaintiff appeared before Judge Evashavik-Dilucente on his pro se petition to modify the support order at FD 01-03810. Judge Evashavik-Dilucente refused to permit plaintiff to show that his VA pension is a means-based public assistance benefit and thus not to be counted as income for determining child support. Id.

On March 2, 2017, Judge Walko found plaintiff in contempt for failure to pay child support. Motion for TRO at p. 4. Judge Walko ignored plaintiff's position that the case had been removed to federal court, sentenced plaintiff to 6 months in the county jail with a purge of $670.00 and ordered plaintiff to notify the VA to release and direct his derivative VA pension to his son. Id. Plaintiff was forced to pay the purge.

On November 4, 2014, plaintiff had a hearing before Domestic Relations Officer Weber. Brief in Support (Doc. No. 18-1) at 9. DRO Weber acknowledged that plaintiff's pension benefits are exempt from attachment and garnishment, but nevertheless insisted that the funds can be accessed to pay support once they are given to the veteran. Id. at 9-10. DRO Weber then proceeded in a manner that rejected plaintiff's legal arguments and sought to collect plaintiff's pension funds in satisfaction of the support order at FD 01-03810. Id. at 10.

Clearly, plaintiff was aware of his outstanding support obligation and the potential consequences of his continued failure to pay, including the seizure of his pension funds and being held in contempt. Plaintiff's submissions also reveal that he raised in state court the very grounds which he currently advances to support the instant lawsuit. According to plaintiff, the state actors rebuffed his contentions, held him in contempt, and seized or forced him to pay funds from his bank account.

Against this backdrop, plaintiff's contention that "defendant" denied him due process is unavailing. In fact, plaintiff had multiple opportunities, including a motion hearing scheduled at his request, to raise the issue of the means-based nature of his VA pension and contest the legality of the seizures, contempt findings and incarcerations. See Love v. Love, 33 A.3d 1268, 1281 (Pa. Super. 2011) (quoting Nicholson v. Combs, 550 Pa. 23, 703 A.2d 407, 414 (1997)) ("A support…order is a creation of statute… which is enforceable by operation of law. Proceedings relative to such orders contain due process requirements, evidentiary findings and involve scrutiny by the court as to their validity…In return for this closely proscribed legal proceeding with its attendant safeguards and judicial findings, the legislature has extended the power to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors."). Plaintiff cannot seek redress in federal court simply because he did not obtain a favorable result in the proceedings before a state tribunal; this is not a denial of due process.

In short, plaintiff had notice of the Commonwealth's actions, the ability to be heard on any issue relevant to the proceeding and to challenge any initial determination or adverse ruling. He cannot elect to forego or disregard the state process that had the ability to eliminate any perceived inaccuracy or unfair advantage inuring to the Commonwealth and then claim that his

14

due process rights have been violated. All the process that is due has been received under such circumstances. See Marshall v. Lauriault, 372 F.3d 175, 186 (3d Cir. 2004) (observing that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" and concluding that where a party had adequate notice under the circumstances and the ability to pursue its claim in state court system and receive redress, the party has been afforded all the process that is due.); DeBlasio, 53 F.3d at 597 (same).

Moreover, Pennsylvania's judicial system supplied ample opportunities for plaintiff to challenge defendant's efforts to enforce the order of child support against him. The Pennsylvania Superior Court has "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy." 42 Pa. C. S. § 742. The Superior Court has jurisdiction to review support related proceedings. See Jaskiewicz v. Jaskiewicz, 473 A.2d 183 (Pa. Super. 1984) (reviewing modification of child support order). Likewise, the Superior Court also has jurisdiction to review orders of contempt issued in child support proceedings, including those involving a purge condition. See Foulk v. Foulk, 789 A.2d 254, 258 (Pa. Super. 2001) (reviewing an order of contempt with purge condition for failure to pay spousal support). Finally, the Superior Court has jurisdiction to review orders of garnishment[2] issued in support proceedings. See Laws v. Laws, 758 A.2d 1226 (Pa. Super. 2000) (reviewing garnishment imposed for purposes of child support). And while the Superior Court's "scope of

---

[2] Plaintiff contends that his veterans' pension has been "garnished," but the facts of his "complaint" do not support this allegation. Garnishment requires a creditor to petition the court "to order a third party who is indebted to or is bailee for the debtor to turn over to the creditor any of the debtor's property (such as wages or bank accounts) held by that third party." Black's Law Dictionary (9th ed. 2009). There is no indication that plaintiff's veterans' benefits were subject to a writ of garnishment or turned over by the Veterans' Administration. If plaintiff's funds were in fact garnished, the Veterans' Administration, not plaintiff, would have standing to contest the garnishment. See Sanchez Dieppa v. Rodriguez Pereira, 580 F. Supp. 735, 735 (D.P.R. 1984) (granting Veterans' Administration's motion to quash writ of garnishment).

review in support proceedings is limited to abuse of discretion, see Jaskiewicz, 473 A.2d at 184, a lower court abuses its discretion where "it misapplies the law, exercises its discretion in an unreasonable manner, or does not follow legal procedure." Foulk, 789 A.2d at 258. Thus, any actual error in applying the law to plaintiff's case – including plaintiff's contention that the defendant misapplied the law in finding his veterans' pension benefits in his bank account were subject to seizure and/or use to satisfy child support - was subject to correction through the appellate process.[3]

In short, plaintiff's allegations make clear that he had notice and an opportunity to be heard as a well as sufficient avenues for review and correction of any actual legal error. These circumstances demonstrate that any claim predicated on the Due Process Clause of the Fourteenth Amendment is subject to dismissal.

Finally, even assuming *arguendo* that consideration of plaintiff's claims is not barred by Younger abstention or the Eleventh Amendment and/or his claims are not rendered meritless by the applicable forms of judicial immunity and/or he has not had an ample opportunity to air his claims in state court, plaintiff would not prevail on the merits. In Rose v. Rose, the plaintiff

---

[3] Plaintiff's efforts to invoke the Fourth and Eighth Amendments are misplaced. It is well settled that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, [and] not [] more generalized [notions from other constitutional provisions]" are to guide the court's analysis of the particular claim advanced. Graham v. Connor, 490 U.S. 386, 395 (1989); accord County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (same). The Fourth Amendment does not provide a more explicit source for protection of the rights involved where the conduct complained of flowed directly from the legal process afforded by a state legislature and action by a state court in implementing that process. And plaintiff has failed to identify anything that can be said to be a seizure of his person or property that would be unreasonable within the meaning of the Fourth Amendment in any event. Cf. Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (neutral and detached judicial review of the basis for seizure or arrest supplies the traditional protection afforded by the Fourth Amendment); United States v. United States District Court, 407 U.S. 297, 316 (1972) (the heart of the Fourth Amendment is its preference for the judgment of a judicial officer in passing on whether a search or seizure is warranted). Further, there is nothing cruel or unusual about the imposition of incarceration following a finding of contempt of court.

challenged a Tennessee court for holding him in contempt for failure to pay child support when his only source of income was his veterans' pension. 481 U.S. 619, 621-22 (1987). The plaintiff in Rose contended, *inter alia*, that federal law preempted the state court's jurisdiction over his veterans' benefits, which he alleged were exempt from legal process under 38 U.S.C. § 3101.[4] Id. at 630-34. The Supreme Court examined the legislative history of the exemption statute and determined that veterans' benefits were intended to "provide reasonable and adequate compensation for disabled veterans *and their families*." Id. at 630 (citing S.Rep. No. 98–604, p. 24 (1984)). The Supreme Court held that federal law did not preempt the Tennessee court's jurisdiction to enforce an order of child support because there was no conflict between state and federal law. Id. It also determined that the state court's enforcement efforts were consistent with the legislative intent of the federal statutes relied on by the plaintiff to argue exemption. Id. In other words, "the purpose of the federal exemption statute is to serve as a shield for the veteran and his dependents, not to serve as a sword to be used by the veteran against his dependents." See Case v. Dubaj, No. CA 08-347, 2011 WL 3806291, at *4 (W.D. Pa. Aug. 29, 2011) (McLaughlin, J.) (quoting Gerold v. Gerold, 6 Or.App. 353, 488 P.2d 294, 295 (Ore.App.1971.))

The Supreme Court's analysis in Rose would apply equally to plaintiff's claim that "defendant" unlawfully seized his bank account or used his pension benefits to satisfy the order of child support. See 2011 WL 3806291 at *5 (W.D. Pa. Aug. 29, 2011) (applying the analysis in Rose and holding that federal law did not "bar the seizure of the plaintiff's bank account to satisfy his family support obligations") (citing Rose, 481 U.S. at 635). Applying the Court's analysis in Rose, the Allegheny County Court of Common Pleas' efforts to enforce a valid order

---

[4] The plaintiff also argued that his veterans' benefits were exempt from garnishment under two provisions of the Child Support Enforcement Act, 42 U.S.C. § 659(a) and § 662(f)(2). Rose, 481 U.S. at 634-35.

17

of child support against plaintiff by holding him in contempt, seizing his bank account and/or holding him in contempt until his support obligations are satisfied were not contrary to federal law.

For the reasons set forth above, plaintiff's motion to challenge the jurisdiction of defendant and motion for temporary restraining order will be denied and defendant's motion to dismiss will be granted. Final judgment will be entered in form of an order dismissing the case and the Clerk will be directed to mark the case close. Appropriate orders will follow.

Date: September 25, 2017

s/David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:    John R. Paylor  
       P.O. BOX 762  
       Braddock, PA 15104

(*Via First Class Mail*)

Caroline Liebenguth, Esquire

(*Via CM/ECF Electronic Mail*)